IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELECTRONIC CLAIMS PROCESSING, INC. t/d/b/a MEDCOMSOFT,  Plaintiff  v.  M.R. SETHI, M.D., S.C.,  Defendant. | CIVIL NO. 3:12-cv-249 JUDGE KIM R. GIBSON |

## MEMORANDUM AND ORDER OF COURT

**GIBSON, J.**

**I.   SYNOPSIS**

This matter comes before the Court on Defendant M.R. Sethi, M.D., S.C.'s ("Sethi") Amended Motion to Dismiss, or in the Alternative, to Stay Proceedings Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) & 12(b)(6)[1] (the "Amended Motion to Dismiss or Stay") (Doc. No. 9). Sethi has filed a Brief in Support of Motion to Dismiss, or in the Alternative, to Stay Proceedings (Defendant's "Brief in Support") (Doc. No. 7) and Plaintiff Electronic Claims Processing, Inc. t/d/b/a MedcomSoft ("ECP") has filed a Reply/Response in Opposition to Defendant's Amended Motion to Dismiss, or in the Alternative, to Stay Proceedings pursuant to

---

[1] Sethi has not explained why this Court lacks subject matter jurisdiction or why venue is improper. The Court finds that the Court has diversity jurisdiction in this matter pursuant to 28 U.S.C.§§ 1332 and 1441. Sethi's only disagreement with ECP with respect to venue appears to be whether this venue is the exclusive venue in which this action may be heard; Sethi appears to argue that while venue is proper in this Court, venue is also proper elsewhere. The Court notes that in both Sethi's Amended Motion to Dismiss or Stay (Doc. No. 9) and Brief in Support (Doc. No. 7), and at oral argument, the thrust of Sethi's argument is that this Court should, in its discretion, dismiss or stay the proceedings under *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 495 (1942), and its progeny. Understanding Sethi's concern to be whether the Court *should* proceed, the Court heard oral argument to determine whether the Court should exercise its jurisdiction or abstain from this matter, in light of a related action pending in Wisconsin state court. It is this latter issue that the Court addresses here.

1

Fed. R. Civ. P. 12(b)(1), 12(b)(3) & 12(b)(6) (the "Response in Opposition") (Doc. No. 14). Following the submission of these filings, the Court heard oral argument on the matter. For the reasons that follow, the Court will **DENY** Sethi's Amended Motion to Dismiss or Stay.

## II.   JURISDICTION AND VENUE

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. Venue is proper pursuant to 28 U.S.C. § 1441(a).[2]

## III.   FACTUAL AND PROCEDURAL BACKGROUND

This matter comes before the Court pursuant to a Complaint filed by ECP in the Court of Common Pleas of Cambria County, Pennsylvania and subsequently removed to this Court by Defendant Sethi. Prior to the instant dispute, ECP provided medical billing and medical records management services to Sethi, a medical practice group that provides medical services in Milwaukee County, Wisconsin, pursuant to several contractual agreements. (See Doc. No. 1-2 at 5-7;[3] Doc. No. 7-1 at 1-3). At some point, relations between Sethi and ECP went sour. Correspondence was exchanged between the parties. (See Tr. of Oral Argument; Doc. No 1-2 at 71-73, 85-86.) On August 10, 2012, Counsel for ECP sent a letter to Sethi accusing Sethi of a breach of contract and threatening legal action in the event Sethi failed to comply with the demands set forth in the letter. (See Doc. No. 1-2 at 85-86.) Sethi responded to the August 10, 2012 letter through a letter dated August 29, 2012 in which Counsel for Sethi[4] accused ECP of

---

[2] Venue also appears proper pursuant to the forum selection clause of the Medical Billing Services Agreement. (See Doc. No. 1-2 at 45.) Although the Hosting Master Services Agreement states that "You [Sethi] . . . agree to the Court of Common Pleas of Cambria County, Pennsylvania as the appropriate forum" (see Doc. No. 1-2 at 58), upon inquiry from this Court, Sethi explained that he did not contend that venue was improper in this Court because the action had been removed from the Court of Common Pleas of Cambria County (see Tr. of Oral Argument).

[3] Because several exhibits are included in Document Number 1-2, the Court will use the pagination from the ECF document stamp that appears on the top of the filing.

[4] The Court refers here to Sethi's Wisconsin Counsel, not Sethi's Pennsylvania Counsel who appeared before the Court at oral argument on January 17, 2013.

"material and intentional breaches" of two agreements between the parties: the MedcomSoft Medical Billing Services Agreement (the "MBSA") and the Hosting Master Services Agreement (the "HMSA"). (See Doc. No. 1-2 at 71-73.) Sethi informed ECP that the two Agreements—the MBSA and the HMSA—were terminated, demanded a return of Client Data, demanded that ECP turn over access and control of a domain name, and informed Sethi that it may pursue legal action. (See Doc. No. 1-2 at 71-72.)

Following the August 29, 2012 letter, Sethi filed suit against ECP on September 13, 2012 in the Circuit Court of Milwaukee County, Wisconsin (the "Wisconsin Action"). (See Doc. No. 7-1; Doc. No. 9 at ¶ 1; Doc. No. 14 at ¶ 1.) The Complaint in the Wisconsin Action (the "Wisconsin Complaint") contains four counts: a claim for conversion (Count I), a claim for breach of fiduciary duty (Count II), a claim for estoppel (Count III), and a request for a declaratory judgment (Count IV). (See Doc. No. 7-1.) With respect to Count IV, Sethi specifically seeks: 1) a declaration that the MBSA and HMSA no longer constitute valid and binding contracts because the agreements were properly terminated by Sethi due to MedcomSoft's [ECP's] material uncured breaches, 2) a declaration that MedcomSoft [ECP] is obligated to immediately return all Client Data to Sethi, and 3) a declaration that MedcomSoft [ECP] is required to assign the domain name www.sethimd.org to Sethi. (See Doc. No. 7-1 at 9.) ECP then moved to dismiss the Wisconsin Action based on forum selection clauses in the MBSA and the HMSA, lack of personal jurisdiction, and *forum non conveniens*. (See Doc. No. 7-2; Doc No. 9 at ¶ 2; Doc. No. 14 at ¶ 2.) Sethi opposes ECP's Motion to Dismiss, which is currently pending before the Wisconsin state court. (See Doc. No. 9 at ¶¶ 2, 3; Doc. No. 14 at ¶¶ 2, 3.)

On November 19, 2012, ECP commenced an action against Sethi in the Court of Common Pleas of Cambria County, Pennsylvania (the "Pennsylvania Action"). (See Doc. No. 1

3

at ¶ I; Doc. No. 1-2) On November 30, 2012, Sethi removed that action to this Court. (See Doc. No. 1.) The Complaint in the Pennsylvania Action (the "Pennsylvania Complaint") contains two counts—a claim for breach of contract (Count I) and a request for declaratory judgment (Count II)—and a "Petition for Special Relief in the form of a Preliminary Injunction." In Count II, the request for declaratory judgment, ECP seeks a declaration that 1) the Plaintiff did not breach the terms of the MBSA or HMSA, 2) both agreements remain in full force and effect,[5] and 3) Plaintiff is the lawful and rightful owner of the Domain Name and any related e-mail or other hosting services related therewith.[6] (See Doc. No. 1-2 at 16.)

Sethi, in its Amended Motion to Dismiss or Stay, contends that the Pennsylvania Action and the Wisconsin Action are parallel actions and that the present action "is thus uneconomical, vexatious, unnecessarily multiplies the proceedings, and should be dismissed pursuant to *Brillhart v. Excess Insurance Co.*, 316 U.S. 491, 495 (1942) and its progeny." (See Doc. No. 9 at ¶¶ 4-5.) In the alternative, Sethi requests that proceedings in the instant action be stayed pending the outcome of ECP's Motion to Dismiss in the Wisconsin Action, and subsequently dismissed if the Wisconsin court denies ECP's Motion to Dismiss. (See Doc. No. 9 at ¶ 6.) In opposing Sethi's Amended Motion to Dismiss or Stay, ECP denies that the Pennsylvania Action and Wisconsin Action are parallel actions, asserts that the Pennsylvania Action is more comprehensive than the Wisconsin Action, and that the Wisconsin Action was "an anticipatory filing in bad faith by [Sethi] to deprive Pennsylvania courts jurisdiction over the claims." (See Doc. No. 14 at ¶¶ 4, 5, 9.) This matter is now ripe for adjudication.

---

[5] ECP appears to have abandoned this argument as ECP's Counsel stated on numerous occasions at oral argument that ECP agreed that the contracts had been terminated. (See Tr. of Oral Argument.)

[6] ECP also appears to abandon this argument as ECP's Counsel stated at oral argument, in essence, that Sethi could have the domain name. (See Tr. of Oral Argument.)

4

## IV. LEGAL STANDARD

As a general rule, "federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them' and therefore, 'the pendency of an action in [a] state court is no bar to proceedings concerning the same matter in [a] Federal court having jurisdiction . . . .'" *Hartford Life Ins. Co. v. Rosenfeld*, No. 05-5542 (KSH), 2007 U.S. Dist. LEXIS 55819, at *8 (D.N.J. Aug. 1, 2007) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)). Generally, "both state and federal actions should go forward until one of them results in a judgment that may be asserted as res judicata in the other." *NYLife Distribs. v. Adherence Group*, 72 F.3d 371, 376 (3d Cir. 1995).

There are, however, doctrines of abstention which allow district courts to decline to hear cases over which they have jurisdiction. See *id.* Relevant here are two such doctrines—the *Colorado River* doctrine and the *Brillhart* doctrine—that are "aimed at avoiding duplicative litigation" and which are "premised on considerations which concern the efficient administration of judicial resources and the comprehensive disposition of cases." *Id.* As succinctly explained by the District Court of New Jersey, the

> *Colorado River* abstention permits a district court to decline jurisdiction where a parallel state court action is ongoing . . . [and] "exceptional circumstances" exist. . . . [U]nder the *Brillhart* abstention doctrine, if the parallel claims sought to be dismissed or stayed seek relief under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), the district court is permitted to exercise "greater discretion" than is "permitted under the 'exceptional circumstances' test of *Colorado River*" in determining whether to abstain."

*Hartford Life Ins. Co.*, 2007 U.S. Dist. LEXIS 55819, at *9 (quoting *Colorado River*, 424 U.S. at 817-18; *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995); citing *Brillhart*, 316 U.S. 491, 494-95 (1942)) (internal citations omitted).

Not infrequently, however, actions involve claims for both declaratory and coercive relief. The matter before the Court today is one of these "mixed claim" actions, in that ECP seeks declaratory relief, injunctive relief, and damages. Unfortunately, the Third Circuit has not decided whether such "mixed claim" actions should be decided under the discretionary *Brillhart* abstention doctrine or the more stringent *Colorado River* abstention doctrine. *Id.* at 510-11; *Columbia Gas of Pa. v. Am. Int'l Grp.*, No. 10-1131, 2011 U.S. Dist. LEXIS 7919, at *4-5 (W.D. Pa. Jan. 27, 2011). Courts of Appeals in other circuits that have addressed the issue have taken divergent positions on the matter. *Hartford Ins. Co. v. Stead*, 848 F. Supp. 2d 506, 511 (M.D. Pa. 2012); *Leonard v. State Farm Mut. Auto. Ins. Co.*, No. 08-1451, 2009 U.S. Dist. LEXIS 87241, at *13 (W.D. Pa. Sept. 2, 2009). "There is no resounding majority view . . . ." *Columbia Gas*, 2011 U.S. Dist. LEXIS 7919, at *5; see also *Hartford Ins. Co.*, 848 F. Supp. 2d at 511.

Although there is similarly no consensus among the District Courts in this Circuit as to how mixed claim actions should be approached, in several recent decisions, District Courts in the Third Circuit have followed the so-called "heart of the matter" or "essence of the lawsuit" approach. See *Hartford Ins. Co.*, 848 F. Supp. 2d at 512-513; *Columbia Gas*, 2011 U.S. Dist. LEXIS 7919, at *8-9; *Leonard*, 2009 U.S. Dist. LEXIS 8724, at *16-17. Under this approach, the Court "cut[s] through the rhetorical fog of the pleadings," examines the relationship between the claims, and determines what the "essence of the dispute" concerns. See *ITT Indus., Inc. v. Pac. Emp'rs. Ins. Co.*, 427 F. Supp. 2d 522, 566-67 (E.D. Pa. 2006). Courts following this approach have been persuaded that "an approach that examines the crux of the litigation, and carefully considers the law surrounding a court's discretionary exercise of jurisdiction, best accommodates a balance between the various interests at stake." *Columbia Gas*, 2011 U.S. Dist. LEXIS 7919, at *8-9; see also *Hartford Ins. Co.*, 848 F. Supp. 2d at 512 (quoting *Columbia Gas*,

2011 U.S. Dist. LEXIS 7919, at *8-9). Noting that "the Declaratory Judgment Act itself does not confer a federal court with jurisdiction; thus, every declaratory judgment action to which discretion attaches is likewise supported by an independent basis for federal jurisdiction[,]" *Columbia Gas*, 2011 U.S. Dist. LEXIS 7919, at *9, they have concluded that

> the Act itself, therefore, inherently contemplates that a court will have discretion whether to exercise jurisdiction over a dispute between parties of diverse citizenship, if the dispute is declaratory in nature. Given the administrative, jurisprudential, and other concerns . . . it is fundamentally reasonable to pull a dependent coercive claim within the ambit of the discretion afforded its declaratory counterpart. "It would be the tail wagging the dog if the presence of a subordinate claim were sufficient to require a federal court to hear primary claims that it has determined are better resolved elsewhere."

*Id.* (quoting *Franklin Commons East P'ship v. Abex Corp.*, 997 F. Supp. 585, 592 (D.N.J. 1998)); see also *Hartford Ins. Co.*, 848 F. Supp. 2d at 512 (quoting *Columbia Gas*, 2011 U.S. Dist. LEXIS 7919, at *8-9). This Court agrees that the "heart of the action" approach is the most compelling because it does not permit "the tail [to wag] the dog," *Franklin Commons*, 997 F. Supp. at 592, while "simultaneously protect[ing] claims for injunctive [and coercive] relief that eclipse those declaratory relief claims, or are truly independent." *Hartford Ins. Co.*, 848 F. Supp. 2d. at 513. The Court will therefore apply the "heart of the matter"/"essence of the lawsuit" approach.

V.   **DISCUSSION**

   A.   **The "Essence of the Lawsuit"**

Examining the Pennsylvania Action, the Court concludes that the essence of this lawsuit is a claim for breach of contract. ECP's request for declaratory judgment prays that this court declare that "Plaintiff did not breach the terms of the MBSA or the HMSA, that both agreements remain in full force and effect, and that the Plaintiff is the lawful and rightful owner of the Domain Name and any related e-mail or other hosting services related therewith." (Doc. No. 1-2

at 16.) The importance of ECP's request for Declaratory Relief to the instant action is questionable in light of the fact that ECP appeared to abandon the last two of these three requests at oral argument. (See Tr. of Oral Argument.) Absent the requests for a declaration 1) that both agreements remain in full force and effect and 2) that ECP is the lawful and rightful owner of the Domain Name and any related e-mail or other hosting services related therewith, ECP's sole request for declaratory relief is a request that this Court declare that ECP did not breach the terms of the MBSA or the HMSA. The propriety of granting this relief turns on whether ECP did, in fact, breach the contracts between the parties—an issue that is bound up in, if not resolved by, the litigation of the underlying breach of contract claim asserted by ECP against Sethi.

Even if this Court were to examine the requests for declaratory relief that ECP has seemingly abandoned, the Court still concludes that the essence of this lawsuit is a breach of contract matter. ECP's Complaint appears to allege that the agreements remain in full force and effect because Sethi attempted to terminate the agreements in reliance on a false assertion that ECP breached the agreements. (See Doc. No. 1-2 at 15.) Sethi appears to have declared the agreement terminated as a result of ECP's breach. (See Doc. No. 7-1 at 9.) Although the Court does not now resolve the issue of what circumstances are necessary for a termination of the agreements under the contracts, the Court notes that, at least under the HMSA, "[e]ach party [has] the right to terminate [the] Agreement prior to the end of the then-current one year contract term if the other party breaches any material term of this Agreement and such breach[,] if capable of cure[,] is not cured within thirty (30) days following receipt by the breaching party of written notice of such breach." (See Doc. No. 1-2 at 55.) Thus, a determination of whether the contract remains in full force and effect will likely depend, at least in part, on the actions of the parties under the contracts and whether such actions constitute a breach of a material term.

Additionally, although ECP also requests a declaration that ECP "is the lawful and rightful owner of the Domain Name and any related e-mail or other hosting services related therewith" (Doc. No. 1-2 at 16), after examining the Pennsylvania Complaint as a whole, the Court concludes that this is not the essence of the relief sought by ECP. Both ECP's request for damages and a preliminary injunction enjoining Sethi from continuing to use ECP's software (see Doc. No. 1-2 at 18) rest upon alleged breaches of the agreements between Sethi and ECP that are now allegedly causing financial detriment to ECP (see generally Doc. No. 1-2 at 4-10). Unlike in *Hartford Insurance Company v. Stead*, 848 F. Supp. 2d 506, 513 (M.D. Pa. 2012) where the court found that the plaintiff's request for injunctive relief hinged on the requested declaratory relief and therefore concluded that the "heart" of the matter was an action for declaratory judgment, here, ECP's substantive request for injunctive relief[7] is related to the alleged breach(es) of contract by Sethi. Thus, ECP's request for injunctive relief, ECP's request for damages, and a significant portion of ECP's request for declaratory relief depend on the alleged breach(es) of contract. The Court therefore concludes that the "heart" or "essence" of this lawsuit is an action for breach of contract. Consequently, Sethi's request that this Court dismiss, or in the alternative, stay proceedings must be analyzed under the *Colorado River* doctrine and not the *Brillhart* abstention doctrine, like Sethi asserts.[8]

---

[7] While ECP also requests that this Court enjoin Sethi from proceeding in the Wisconsin Action (see Doc. No. 1-2 at 18), the Court finds that this request relates to the proper forum in which to adjudicate disputes and is not related to the underlying substance of the suit, and therefore has little relevance in determining the "essence" of this lawsuit.

[8] In its Brief in Support, Sethi asserts that "[t]he Western District of Pennsylvania has repeatedly held that [*sic*] *Brillhart* abstention applies even where the action in question includes claims for monetary relief, provided that the primary claims in the actions are seeking declaratory relief." (See Doc. No. 7 at 3.) While the Court does not disagree with this statement of law, for reasons explained above, the Court finds that the primary claims in this action (the Pennsylvania Action) are seeking coercive, rather than declaratory relief.

### B. Application of the *Colorado River* Doctrine

In determining whether abstention is warranted under the *Colorado River* doctrine, the threshold issue is whether the two actions are parallel. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). An action is parallel if it involves the same parties and "substantially identical claims, raising nearly identical allegations and issues." *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 306 (3d Cir. 2006) (quoting *Yang v. Tsui*, 416 F.3d 199, 205 n.5 (3d Cir. 2005) (internal citations omitted). If the actions are not parallel, the district court lacks the power to abstain. *Ryan*, 115 F.3d at 196.

Here, there is an identity of parties between the Pennsylvania Action and the Wisconsin Action; both involve only ECP and Sethi. (See Doc. No. 1 at 1; Doc. No. 7-1 at 1.) The parties dispute whether the two actions raise substantially identical claims. (See Doc. No. 9 at ¶ 4; Doc. No. 14 at ¶ 4; see generally Doc. No. 7; Tr. of Oral Argument.) Sethi asserts that the two actions "both seek declaratory resolution of the same question . . . [and] if declaratory relief is granted in one action, it will thus have *res judicata* effect, precluding the continuation of the other action." (Doc. No. 7 at 2.) ECP asserts that the majority of the Wisconsin Action "deals strictly with an issue as to an internet domain name, which is one (1) limited issue stemming from the contractual agreements between the parties underlying the instant mater . . . ." (Doc. No. 14 at ¶ 9.) While the Court notes that it is initially persuaded by ECP's position that the thrust of the Wisconsin Action concerns the dispute over the ownership of the domain name, and further doubts whether a declaration that the Agreements were properly terminated by Sethi due to ECP's material uncured breaches of both agreements would necessarily preclude the continuation of the Pennsylvania Action, where ECP asserts claims for damages due to Sethi's alleged breach(es), pursuant to *res judicata*, the Court finds it unnecessary to resolve this issue.

10

Even if the actions raise substantially identical claims such that the Wisconsin Action and the Pennsylvania Action are parallel actions, the Court finds that exceptional circumstances that are required before a district court may abstain from exercising its jurisdiction pursuant to *Colorado River* do not exist here.

The factors to be considered when deciding whether exceptional circumstances exist are 1) which forum first assumed jurisdiction over the property at issue, 2) the inconvenience of the federal forum, 3) the desirability of avoiding piecemeal litigation, 4) the order in which jurisdiction was obtained in the concurrent forums, 5) which forum's law provides the rule of decision, and 6) the adequacy of the state proceeding in protecting the parties' rights. *Colorado River*, 424 U.S. at 818 (establishing the first four factors); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26 (1983) (adding factors five and six to the analysis); *McMurray, Jr. v. De Vink*, 27 Fed. Appx. 88, 91 (3d Cir. 2002). Once these factors are balanced, "with the balance heavily weighted in favor of the exercise of jurisdiction," *Moses H. Cone*, 460 U.S. at 16, "[o]nly the clearest of justifications will warrant dismissal[,]" *Colorado River*, 424 U.S. at 819.

In the instant case, there is no property at issue and therefore the first factor is irrelevant. At oral argument and in its Motion to Dismiss the Wisconsin Action, ECP asserted that litigating in Wisconsin would be inconvenient because ECP anticipates a need to call a large number of Pennsylvania-based witnesses at trial. (See Tr. of Oral Argument; see also Doc. No. 7-2 at 14). Sethi, in its response at oral argument, fairly pointed out that litigating in Pennsylvania would mean that its Wisconsin-based witnesses would have to appear in Pennsylvania. (See Tr. of Oral Argument.) While the Court takes note of Sethi's argument that it is a localized business (see Tr. of Oral Argument), the MBSA and the HMSA each provide for jurisdiction and venue in the

11

Commonwealth of Pennsylvania (see Doc. No. 1-2 at 45, 58). Whether the forum selection clauses in these contracts provide for exclusive or permissive jurisdiction and/or venue in Pennsylvania is a disputed question that does not presently concern this Court. What does matter, however, is that neither party disputes that jurisdiction and venue are proper in Pennsylvania. (See Doc. No. 9 at ¶ 3; Tr. of Oral Argument.) While Wisconsin may be a more convenient forum for Sethi than Pennsylvania, the Court is not persuaded that litigating in Pennsylvania is so inconvenient for Sethi, who agreed to be subject to suit in Pennsylvania pursuant to the contracts, such that this factor should weigh in favor of this Court abstaining from exercising jurisdiction. In contrast to Sethi's agreement to be subject to suit in Pennsylvania, ECP made no such explicit agreement to be subject to suit in Wisconsin. Thus, the Court finds that the second factor weighs against abstention.

The third factor, the "avoidance of piecemeal litigation" factor, "is met . . . only when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan*, 115 F.3d at 197-98 (acknowledging and overruling contrary authority). In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976), the Supreme Court suggested that there "must be a strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Ryan*, 115 F.3d at 198 (citing *Colorado River*, 424 U.S. at 819). In the Third Circuit, "[t]he presence of garden-variety state law issues has not . . . been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." *Id.* This case involves the application of Pennsylvania contract law.[9] Sethi has not cited, and the Court is not aware, of

---

[9] The parties agree that Pennsylvania law governs this action. (See Tr. of Oral Argument.)

12

any strong federal or congressional policy that these claims should be tried in state courts. This factor therefore does not favor abstention.

The fourth factor, the order in which jurisdiction was obtained in the concurrent forums, "does not turn upon 'which complaint is filed first, but rather [on] . . . how much progress has been made in the two actions.'" *McMurray, Jr.*, 27 Fed. Appx. at 93 (quoting *Moses H. Cone*, 460 U.S. at 21) (edits in original). Here, both the Wisconsin Action and the Pennsylvania Action are in the early phases of litigation. This Court has held an oral argument on jurisdictional issues and is now deciding such issues. The Wisconsin Court has scheduled a hearing on jurisdictional issues for January 31, 2013 (see Doc. No. 9 at ¶ 2; Doc. No. 14 at ¶2), after which it will presumably consider such issues. Because the two actions are substantially at the same phase in litigation, this factor does not favor abstention.

Similarly, neither the fifth nor sixth factors favor abstention. While the claims in this action are governed by state law, they are governed by the law of the Commonwealth of Pennsylvania and not that of the State of Wisconsin. (See Doc. No. 1-2 at 45, 58.) Thus, regardless of which court decides this case, the court must apply a body of law which is not its own. Furthermore, "while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law." *Ryan*, 115 F.3d at 199. Thus, the fifth factor does not favor abstention. At oral argument, ECP acknowledged that it was aware of no procedural bar that would prevent it from raising the claims included in the Pennsylvania Action as counterclaims in the Wisconsin Action. However, "the mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal

13

jurisdiction." *Id.* at 200. This factor "is normally relevant only when the state forum is *in*adequate." *Id.* Thus, this final factor does not weigh in favor of abstention.

In conclusion, none of the *Colorado River/Cone* factors that are to be considered when deciding whether exceptional circumstances exist weigh in favor of abstention. Therefore, the strong presumption of exercising jurisdiction has not been overcome. Consequently, the Court will not abstain from exercising jurisdiction in this matter. As a final word, the Court again notes that, at oral argument, ECP demonstrated willingness to settle some of the issues involved in Count II of their Pennsylvania Complaint and the declaratory judgment requests in Sethi's Wisconsin Complaint. While the Court concludes that the proper course is to exercise its jurisdiction in this matter, the court is mindful of the waste of resources that can result from similar actions proceeding in different forums simultaneously. Therefore, the Court encourages the parties to seek to reach an agreement on these issues, to the extent possible.

## VI.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Sethi's Amended Motion to Dismiss or Stay (Doc. No. 9).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELECTRONIC CLAIMS ) <br> PROCESSING, INC. t/d/b/a ) <br> MEDCOMSOFT, ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> M.R. SETHI, M.D., S.C., ) <br> ) <br> Defendant. ) | CIVIL NO. 3:12-cv-249 <br> JUDGE KIM R. GIBSON |

## ORDER

**AND NOW**, this 22nd day of January, 2013, upon consideration of Defendant's Amended Motion to Dismiss, or in the Alternative, to Stay Proceedings Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) & 12(b)(6) (Doc. No. 9), Defendant's Brief in Support of the Motion to Dismiss, or in the Alternative, to Stay Proceedings (Doc. No. 7), Plaintiff's Reply/Response in Opposition to Defendant's Amended Motion to Dismiss, or in the Alternative, to Stay Proceedings Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) & 12(b)(6) (Doc. No. 14), and after hearing Oral Argument on the matter, **IT IS HEREBY ORDERED** that Defendant's Amended Motion to Dismiss, or in the Alternative, to Stay Proceedings Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) & 12(b)(6) (Doc. No. 9) is **DENIED**.

Upon consideration of Plaintiff's Amended Motion for Expedited Hearing on Plaintiff's Petition for Preliminary Injunction (Doc. No. 13) and Defendant's Response in Opposition to Plaintiff's Motion for Expedited Hearing on Petition for Preliminary Injunction (Doc. No. 12), **IT IS FURTHER ORDERED** that Plaintiff's Amended Motion for Expedited Hearing on

Plaintiff's Petition for Preliminary Injunction (Doc. No. 13) is **GRANTED**. The parties are to appear for oral argument regarding Plaintiff's Petition for Preliminary Injunction on **January 30, 2013 at 1:30 p.m.** in Courtroom A, 319 Washington Street, Johnstown, PA 15901.

                        **BY THE COURT:**

                        */s/ Kim R. Gibson*

                        **KIM R. GIBSON,**
                        **UNITED STATES DISTRICT JUDGE**